### WEIDEMEYER *v.* BREKKE, ET AL.

[No. 671, September Term, 1966.]

*Decided December 6, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-
NEY, MARBURY, BARNES, FINAN and SINGLEY, JJ.

*C. Maurice Weidemeyer,* with whom were *Thomas M. Schi-
fanelli* and *Clarence F. Rothenburg,* on the brief, for appellant.

*Nicholas Goldsborough* for appellees.

MARBURY, J., delivered the opinion of the Court.

This appeal comes to us from those parts of a decree issued
by the Circuit Court for Anne Arundel County (Childs, J.)
dismissing the plaintiff-appellant's bill of complaint against Nils
Brekke, Howard J. McGrath, Trustee, A. Slater Clarke,
Trustee, and Charles B. Sullivan, Jr. and further declaring that
the chattel deed of trust from Nils Brekke to the trustees dated
August 26, 1962 and recorded among the chattel records of
Anne Arundel County in liber L.N.P. 189, folio 487, securing
the principal balance due from Nils Brekke on a note to Dr. G.
N. Brekke as of November 4, 1964, constituted a prior lien to
that of the plaintiff to the true extent of the principal balance
due from Nils Brekke to Dr. G. N. Brekke.

The decree also declared that the lien of the plaintiff was su-
perior to the deed of trust dated August 6, 1962 and recorded
among the chattel records of Anne Arundel County in liber
L.N.P. 189, folio 491, also to the same trustees, purporting to
secure an indebtedness from Nils Brekke to William C. Wallace.

In his memorandum opinion supporting the decree, Judge
Childs found that the chattel deed of trust, also dated August
26, 1962, and recorded among the chattel records of Anne Arun-
del County in liber L.N.P. 189, folio 495, from Nils Brekke to
the same trustees securing an indebtedness in the amount of
$1,000 due by Nils Brekke to Charles B. Sullivan, Jr., consti-
tuted a valid lien superior to that of the plaintiff which caused
him to dismiss the bill of complaint as to Sullivan.

The personal property that was the subject of the aforemen-
tioned chattel deeds of trust was a 24 ton concrete hull mold,
the unfinished hull of a 46 foot fiberglass sailboat, and the tools
and machinery incident thereto. The title to these chattels was.

in the defendant Nils Brekke, but Trygve Lohne held a mechanic's lien in the amount of $4,679.72 and thereby claimed an undivided one-half interest in the mold. The validity of the mechanic's lien is not herein contested. The unfinished hull and mold were moved to Anne Arundel County from Washington, D. C. in the fall of 1961 and have been there ever since. On December 5, 1962, the Internal Revenue Service filed a tax lien in the office of the Clerk of the Circuit Court for Anne Arundel County for unpaid taxes owed by Brekke. Subsequently, after notice of seizure by the United States Treasury Department, the uncompleted boat and mold were sold at public auction to the appellant Weidemeyer for the sum of $5510. The certificate of sale transferred to the appellant "all right, title, and interest of the said Nils Brekke in and to any personal property described," and went on to describe the boat and mold.

The appellant argued before this Court that the instruments involved came within the provisions of Code (1957), Article 21, Sections 41-51; that they are either bills of sale or chattel mortgages; and that as such they were defectively executed since they did not contain affidavits of consideration as required by Article 21, Section 50 and are invalid as to all persons except the parties to the instruments. They further contend that since the instruments were defective that the United States government gained priority over the parties secured by the instruments and that the sale for delinquent taxes conveyed to the appellant a good clear title free from the liens that were created by the chattel deeds of trust.

Notwithstanding appellant's arguments and the authorities cited by him we see no reason to declare that the deeds of trust from Nils Brekke to the trustees securing indebtednesses to Dr. G. N. Brekke and Charles B. Sullivan, Jr. were not valid deeds of trust. The appellant cites cases where courts of equity have regarded purported bills of sale or consignments as mortgages. In these cases it is manifest that the instruments involved contained no affidavit of consideration and yet they were enforced in equity as mortgages as equity would enforce a deed absolute on its face if it were found that the intent of the parties was to create a mortgage.

The appellant also cites a line of cases and authorities to the

effect that chattel deeds of trust are "in effect a chattel mortgage" or "one of the common forms which a mortgage takes is a deed of trust * * *," or "the conveyance therefore though called a deed is in substance and purpose a mortgage * * *." These propositions are true in that with respect to both chattel mortgages and chattel deeds of trust the property is conveyed to secure an indebtedness and in each case upon default by the debtor the property may be sold to satisfy the claim of his creditor. What is overlooked by the appellant are the facts that there is a line of cases in this state going back over one hundred years that distinguish instruments that are *in effect mortgages* from those that are *technical mortgages,* and also that the statute involved, Code (1957), Article 21, Section 50 (repealed by Acts of 1963, Chapter 538, Section 1, replaced by Code (1964 Rep. Vol.). Article 95B, Sections 9-101 to 9-507) did not include deeds of trust as instruments requiring an affidavit of consideration.

The first of this line of cases is *Charles v. Clagett,* 3 Md. 82, 94, where Eccleston, J. speaking for an evenly divided Court, affirming a judgment for the appellee, said:

"In my opinion, the act of 1846 should be construed as including mortgages, technically such. It is only necessary to mention one class of instruments which have been held in equity to be mortgages, to show, beyond controversy, that the statute could never have been designed to embrace all equitable mortgages. A deed absolute on its face by mistake, if intended to be a mortgage, will be so declared by a court of equity, and I presume it will not be said that if such a deed is without the oath, it will be void under the act. If there are any equitable mortgages not embraced by the statute, why may it not be construed as only applicable to those of a technically legal character? In so doing, much confusion and embarrassment will be avoided, especially in reference to making provision for securing payment to a considerable number of creditors, by deeds, which have been treated and considered as deeds of trust."

It is interesting to note that Judge Mason, who dissented in the *Clagett* case later changed his position and in *Stockett v. Holliday,* 9 Md. 480, 492, said:

> "The law seems to apply to deeds of mortgage, technicall [sic] such, and to bills of sale from grantor to grantee, for the benefit of such grantee. A deed such as this is an absolute conveyance, containing no right of redemption. So an absolute deed with a defeasance, and containing a right of repurchase, which might, according to the real intention of the parties, be treated in equity as a mortgage, yet would not be considered a formal and technical mortgage embraced by the Act of 1846."

This position was reaffirmed in *Kinsey v. Drury,* 146 Md. 227, 230-31, 126 Atl. 125, in 1924 and has not been overruled to date. There this Court said:

> "It has been definitely decided by this Court that a deed of trust securing an indebtedness is not a mortgage within the meaning of various provisions of the recording statutes. In *Stanhope v. Dodge,* 52 Md. 483, it was held that a deed of trust to secure the payment of promissory notes of the grantor might be recorded after the expiration of six months from its date and would then have the same validity as if recorded within that period. The requirement of section 32 of article 21 of the Code that no mortgage shall be valid, except as between the parties, without an affidavit by the mortgagee as to the consideration, has been held applicable only to technical mortgages and not to deeds of trust. *Shidy v. Cutter,* 54 Md. 677; *Snowden v. Pitcher,* 45 Md. 265; *Carlson v. Phelps,* 40 Md. 96; *Stockett v. Holliday,* 9 Md. 499 [480]; *Charles v. Clagett,* 3 Md. 82; *Stanhope v. Dodge, supra.*"

Nor is the situation requiring an affidavit of consideration for a mortgage and not for a deed of trust the only instance where a distinction between the two types of conveyance has been recognized. Code (1957), Article 66, Section 2, relating to future

advances on any "mortgage or deed in the nature of a mortgage," goes on to state: "nor are the provisions hereof intended to apply to deeds of trust in the nature of mortgages or any other deeds of trust to secure bonds, notes or other obligations." As was stated in 4 Md. L. Rev. 111, 117: "If it were simply a deed of trust, the provisions of the Act of 1825, and the provisions of Article 66, even before the amendment of Sections 2 and 3 in 1924, would have been inapplicable." The article then referred to footnote 18 which said: "That a deed of trust is not a mortgage within the provisions of Md. Code (1924) Article 66, and its predecessors, has often been held." (Citing cases.)

The use and validity of deeds of trust on both realty and chattels as a mode of conveyance to secure an indebtedness has long been recognized as a valid device for this purpose. Their use is so common in the District of Columbia and in the neighboring counties of Maryland and Virginia that they have come to be called "Potomac mortgages."

At the time the instant case arose both Section 30, covering affidavits of consideration as to real estate mortgages, and Section 50, pertaining to affidavits of consideration as to chattel mortgages, were in effect and neither mentioned the necessity of such affidavits in connection with deeds of trust. Subsequently Section 50 was repealed by Chapter 538 of the Acts of 1963 and its subject matter is now embraced by the Uniform Commercial Code, now codified as Code (1964 Repl. Vol.), Article 95B. Section 30 was, however, amended by Chapter 652 of the Acts of 1963 to include deeds of trust as well as mortgages on real estate. In doing so it may fairly be inferred that the legislature recognized that deeds of trust were not covered by this section and that there existed a need for this additional coverage.

As shown by the stipulated statement of facts contained in the appellant's brief, "The Certificate of Sale transferred to Appellant 'all right, title, and interest of the said Nils Brekke in and to any personal property described' therein, and the said certificate described the unfinished sailboat and mold." At the time of the sale Brekke owned the uncompleted hull and a one-half undivided interest in the concrete mold subject to his indebtednesses to Dr. Brekke and Sullivan. The tax sale here con-

veyed to the purchaser no other interest in the property than that belonging to the delinquent tax debtor. *Blacklock v. United States,* 41 Ct. Cl. 89, aff'd 208 U. S. 75. Thus the appellant could take no greater interest in the chattels than Brekke had and he took title to the uncompleted hull and mold subject to the two deeds of trust found by the trial court to be valid.

From an examination of the record before us we cannot say that the chancellor erred in finding that the two liens which he allowed created prior interests to that purchased by the appellant.

*Decree affirmed, with costs.*