Nelson N. LEE and Wife, Alice K. Lee, Key West Towers, Inc., and Richard O. Eid, Appellants,

v.

Joseph E. O'LEARY and Wife, Hannelore I. O'Leary, Northern Hospitality, Inc., and William S. Gray, Appellees.

No. 07–85–0350–CV.

Court of Appeals of Texas, Amarillo.

July 15, 1987.

Rehearing Denied Aug. 18, 1987.

---

Patrick A. Pirtle, Nickum & Pirtle, Amarillo, for appellants.

G. Keith McGowan, Levbarg & McGowan, Austin, for appellees.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

COUNTISS, Justice.

This is a wraparound note case. It is before us on an agreed statement, pursuant to Rule 378 of the Texas Rules of Civil Procedure.[1]  Because the parties before us appear both as appellants and as appellees, they will be referred to by name rather than by title.  We affirm those portions of the judgment attacked by Nelson N. Lee and wife Alice K. Lee (the Lees).  We sustain a portion of the attack on the judgment by Key West Towers, Inc. (Key West) and Richard O. Eid (Eid) and modify the judgment to that extent; otherwise, we affirm.

The case involves a complex series of wraparound mortgage note transactions, climaxed by a chain of defaults and a foreclosure sale.  The property in question is a motor hotel in downtown Amarillo.  The chain of title, as pertinent here, is from Ray Berney Enterprises, Inc. and C.R. Peters (Berney/Peters) to Joseph E. O'Leary and wife Hannelore I. O'Leary (the O'Learys), from the O'Learys to the Lees, from the Lees to Key West and, finally, from Key West to Northern Hospitality, Inc. (Northern).[2]

When the Lees purchased the property from the O'Learys, they gave the O'Learys a promissory note (the O'Leary note) secured by a lien on the property.  The O'Leary note was in the sum of $1,150,000.00, which included, or wrapped around, the unpaid balance of three promissory notes that were secured by prior liens on the property.

When Key West purchased the property from the Lees, it gave the Lees a promissory note (the Lee note) secured by a lien on the property.  The Lee note was in the sum of $1,125,000.00, which wrapped around the unpaid balance of the O'Leary note.  Also, Key West and Eid, President of Key West, guaranteed the O'Leary note.

Key West then conveyed the property to Northern in return for a note and guaranty agreement.  Subsequently, Northern defaulted, setting up a chain of defaults back to Berney/Peters, who instituted fore-

---

1. Counsel are commended for presenting the case by agreed statement.  It eases our burden.  We hope others will follow the example.

2. Those in the chain of title who are immaterial to the case are omitted.

closure proceedings and bought the property at the foreclosure sale for $700,000.00.

Thereafter, as pertinent here, the O'Learys sued the Lees on the O'Leary note, and Key West and Eid on their guaranty of the O'Leary note. The Lees then sued Key West and Eid on the Lee note. The trial court gave the O'Learys judgment against the Lees, Key West and Eid for $157,489.85 plus interest, costs and attorney's fees. It then gave the Lees judgment against Key West and Eid for $73,702.70 plus interest, costs and attorney's fees.

### THE LEE APPEAL

The Lees attack the judgment by two points of error, by which they contend the trial court erred (1) by failing to credit the bid price at the foreclosure sale on the amounts owed by the parties, and (2) by giving Key West and Eid credit on the Lee note for the balance owed by the Lees to the O'Learys on the O'Leary note. The points will be resolved collectively, because they are grounded on one problem: How to calculate a deficiency judgment on a wraparound note.

When Berney/Peters foreclosed, there was an unpaid balance of $974,382.12 on the O'Leary note, the wraparound obligation included in the Lee note. At that time, the unpaid balance of the Lee note (including the O'Leary wraparound) was $1,038,495.86. The trial court gave Key West and Eid credit for the unpaid balance on the O'Leary note, and, after adding $9588.96 in interest that had accrued on the $64,113.74 balance by trial time, ordered Key West and Eid to pay $73,702.70 to the Lees. The Lees argue that the court should have credited the bid price at the foreclosure sale, $700,000.00, instead of the balance on the O'Leary note, $974,382.12. This would have increased the award to Lee from $73,702.70 to $348,084.82. We conclude, however, that the trial court gave the correct credits.

There are several ways to approach the problem before us. *See and compare J.M. Realty Investment Corp. v. Stern*, 296 So.2d 588 (Fla.Dist.Ct.App.1974); *Dau-*

*gharthy v. Monritt Associates*, 293 Md. 399, 444 A.2d 1030 (1982); *Maupin v. Chaney*, 139 Tex. 426, 163 S.W.2d 380 (1942); *Habitat, Inc. v. McKanna*, 523 S.W.2d 787 (Tex.Civ.App.—Eastland 1974, no writ). We see no reason, however, to stray from settled principles of contract law or create new or artificial rules simply because we face a relatively unusual kind of business transaction. The obligations of parties to a contract are best determined by the interpretation or construction of their agreement, and nothing more. *See Gallup v. St. Paul Insurance Company*, 515 S.W.2d 249, 250 (Tex.1974); *Republic National Life Insurance Co. v. Spillars*, 368 S.W.2d 92, 94 (Tex.1963); *Skyland Developers v. Sky Harbor Associates*, 586 S.W.2d 564, 570 (Tex.Civ.App.—Corpus Christi 1979, no writ). That rule should prevail, whether a court is dealing with a relatively simple sale and purchase of personalty, *see, e.g., Caviness Packing Co., Inc. v. Corbett*, 587 S.W.2d 543 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.), or, as here, a complex series of real estate transactions involving many parties. The ultimate question, always, is: What did the parties agree to do? That was the approach taken by the Fourteenth Court of Appeals in Houston in the recent wraparound note case of *Consolidated Capital Special Trust v. Summers*, 737 S.W.2d 327 (Tex.App.—Houston [14th Dist.] 1987, no writ), and it is the approach we take here.

In this case, the Lees made the following agreements with Key West and Eid on the debt. First, the deed from the Lees to Key West, signed by the Lees, states: "This conveyance is made further subject to and the Grantee herein does not assume payment of the following indebtednesses: . . . ." The statement is followed by a list of prior liens and debts against the property, including the O'Leary note that was owed by the Lees to the O'Learys and credited on the Key West and Eid note to the Lees. Second, the Lee note, which is the $1,125,000.00 real estate lien note prepared as part of the transaction, signed by Key West, and payable to the Lees, concludes as follows:

The aforesaid note, hereinafter referred to as Wraparound Note, is an all inclusive note which includes within its principal amount the unpaid principal balances of all indebtednesses described in the aforementioned Warranty Deed executed by Nelson N. Lee and wife, Alice K. Lee, to the Undersigned.

When the two instruments are construed together, as they must be, *Jim Walter Homes, Inc. v. Schuenemann,* 668 S.W.2d 324, 327 (Tex.1984), only one conclusion is possible. The $1,125,000.00 note includes those prior debts listed in the deed, and Key West and Eid are not responsible for the balance due on those prior debts. Thus, the plain language in the contract excepts the grantees from assuming payments arising under pre-existing encumbrances, as was the case in *Daugharthy v. Monritt Associates, supra. See also Lyons v. Montgomery,* 701 S.W.2d 641 (Tex.1985).

■■■ Accordingly, in order to decide how much Key West and Eid owe the Lees, the balance due on the prior debts must be subtracted from the balance due on the Lee note. The trial court did that, by subtracting the balance due on the O'Leary note (which wrapped around earlier notes), and entered judgment accordingly. Regardless of the face amount called for by the Lee note, which covers the total obligation on the property, the subsequent language in both instruments clearly reveals the parties' intent to hold Key West and Eid accountable only for the Lees' equity in the note. In interpreting a deed, this Court

endeavors to carry into effect the intention of the parties as expressed therein. *Maupin v. Chaney, supra* at 383. All parts of a contract are to be taken together, giving them such meaning as will carry out the intention of the parties to the fullest extent. *General American Indemnity Company v. Pepper,* 161 Tex. 263, 339 S.W.2d 660, 661 (Tex.1960). Applying those principles, we conclude that the trial court was correct.

It follows that we must also reject the Lees' contention that only the amount bid at the foreclosure sale can be credited on the Lee note.[3] That bid is immaterial, under the facts of this case and our view of the law. The cases cited by the Lees that support crediting the bid price on the debt of the mortgagor, *Maupin v. Chaney, supra; Whalen v. Etheridge,* 428 S.W.2d 824 (Tex.Civ.App.—San Antonio 1968, writ ref'd n.r.e.), are factually distinguishable from the present case. The Lees' points of error one and two are overruled.

## THE KEY WEST—EID APPEAL

Key West and Eid attack the judgment by six points of error. By the first four points, they attack the form of the judgment, contending it is ambiguous and incorrectly states the joint and several liability of the various parties sued by the O'Learys. By their final two points, they contend evidence of Eid's personal liability to the Lees is factually and legally insufficient to support the judgment against him. We will consider the contentions in the order stated.

The question presented by this appeal is: In a suit brought by B against C for a deficiency, what is the proper computation of C's liability?

The "true debt" owing to ... the wraparound mortgagee (B) is $500,000.00, the difference between the wraparound debt ($1,500,000.00) and the included debt ($1,000,000.00). This sum represents the actual equity of B, the seller-wraparound mortgagee in the transaction.

In this context, to allow the bid price as the applicable credit due to C on the wraparound debt would result in a windfall to B because the deficiency ($800,000.00) would exceed the true debt ($500,000.00).

---

**3.** We also find persuasive the example given by Key West and Eid to illustrate that adoption of the Lees' position would be inequitable:

Assume A, the original owner of a tract of land, sells that land to B, taking back a first lien for $1,000,000.00, secured by a Deed of Trust. Assume further that B then sells this same property to C on a wraparound mortgage, taking back a wraparound debt of $1,500,000.00. Assume further C defaults on its indebtedness to B and that B defaults on its indebtedness to A, and that A posts the property for foreclosure in accordance with the Deed of Trust and the laws of the State of Texas. Assume further that at foreclosure A is the successful bidder with a bid of $700,000.00.

Key West and Eid contend the judgment, in its present form, would allow the O'Learys a double recovery: the O'Learys can collect $157,489.85 from the Lees, then collect an additional $157,489.85 from Key West and Eid, jointly and severally. The portion of the judgment in dispute reads as follows:

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that Plaintiffs, JOSEPH E. O'LEARY and wife, HANNELORE I. O'LEARY, have and recover from Defendants NELSON N. LEE and wife, ALICE K. LEE, the sum of ONE HUNDRED FIFTY–SEVEN THOUSAND FOUR HUNDRED EIGHTY–NINE AND 85/100 ($157,-489.85) DOLLARS with interest thereon at the rate of ten (10.0%) percent per annum from the date of this Judgment, reasonable and necessary attorney's fees in the amount of SIX THOUSAND AND NO/100 ($6,000.00) DOLLARS and all costs of court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that Plaintiffs, JOSEPH E. O'LEARY and wife, HANNELORE I. O'LEARY, have and recover from Defendants, KEY WEST TOWERS, INC. and RICHARD O. EID, jointly and severally, the sum of ONE HUNDRED FIFTY–SEVEN THOUSAND FOUR HUNDRED EIGHTY–NINE AND 85/100 ($157,-489.85) DOLLARS with interest thereon at the rate of ten (10.0%) percent per annum from the date of this Judgment, reasonable and necessary attorney's fees in the amount of SIX THOUSAND AND NO/100 ($6,000.00) DOLLARS, and all costs of court.

We agree with the interpretation by Key West and Eid. The foregoing language clearly permits the O'Learys to recover two separate awards of $157,489.85. Yet, it is obvious from the Agreed Statement that the O'Learys were entitled only to a total of $157,489.85, the trial court having found that the Lees, Key West, and Eid are liable for that amount jointly and severally.

■ Courts of Appeals have the power to modify the amount of recovery and reform a judgment to conform with the pleadings and evidence. *State Nat. Bank v. Farah Mfg. Co.*, 678 S.W.2d 661, 697 (Tex.App.—El Paso 1984, writ dism'd by agr.); *Wenk v. City National Bank*, 613 S.W.2d 345, 352–53 (Tex.Civ.App.—Tyler 1981, no writ). Also, if the trial court errs in computing damages, the amount of damages awarded can be reformed by the appellate court. *Atlas Chemical Industries, Inc. v. Anderson*, 514 S.W.2d 309, 319 (Tex.Civ.App.—Texarkana 1974), *aff'd*, 524 S.W.2d 681, 688 (Tex.1975); *see, e.g., Bridwell v. Bernard*, 159 S.W.2d 981 (Tex.Civ. App.—Fort Worth 1942, writ ref'd w.o.m.).

■ Here, the record will not support two separate awards to the O'Learys of $157,489.85 each, against the Lees, and against Key West and Eid. We will, therefore, sustain point of error one through four and modify the judgment to reflect the joint and several liability of the Lees, Key West and Eid to the O'Learys for $157,489.85.

■ Eid utilizes the two remaining points to launch an evidentiary attack on the finding that he is personally liable to the Lees. After reviewing the pleadings, we have concluded that we cannot reach the merits of his attack, however. Rule 93 of the Texas Rules of Civil Procedure requires a verified pleading by a party who denies liability in the capacity in which he is sued. A party who fails to file the verified pleading required by the Rule, specifically complaining of a defect of parties or denying liability in the capacity in which he is sued, waives any complaints he may have about those matters. *Allright, Inc. v. Burgard*, 666 S.W.2d 515, 517 (Tex.App.— Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Sunbelt Const. Corp. v. S & D Mechanical*, 668 S.W.2d 415, 418 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *Butler v. Joseph's Wine Shop, Inc.*, 633 S.W.2d 926, 929 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.).

■ Key West and Eid filed an original answer to the Lees' claim on September 20, 1985. The answer included a general denial and a verified denial by Eid, denying

liability in his individual capacity. However, they filed the pleadings within seven days of the September 23rd trial day, without leave of the court. Tex.R.Civ.Pro. 63. Thus, the pleading must be disregarded. *City of Dallas v. Union Tower Corp.,* 703 S.W.2d 275, 281 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

 Eid's counsel correctly pointed out at trial that a responsive pleading is not required when a cross-claim is served on a party who has made an appearance in the action. Tex.R.Civ.Pro. 92. However, Rule 92 also says that in the absence of a responsive pleading, the party shall be deemed to have pleaded a general denial. If the party wants to assert any of the matters listed in Rule 93, he must do so according to that rule, because Rule 92 states: "In all other respects the rules prescribed for pleadings of defensive matter are applicable to answers to counterclaims and cross-claims." Without a properly filed verified pleading, Eid cannot raise the capacity issue on appeal. Points of error five and six are overruled.

The trial court judgment is modified to award the O'Learys the sum of $157,489.85 against the Lees, Key West, and Eid, jointly and severally, with interest and attorney's fees as stated in the judgment. As modified, the judgment is affirmed.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

*On Motion for Rehearing*

COUNTISS, Justice.

Key West, Eid and the Lees have filed motions for rehearing. Key West and Eid ask us to reconsider our conclusion that their challenge to Eid's personal liability cannot be litigated here because it was not properly pled in the trial court. We have reviewed all of their arguments, but we remain convinced that our conclusion is correct. Eid tendered the pleading denying personal liability within seven days of trial. Rule 63 of the Texas Rules of Civil Procedure specifically permits the filing of a pleading within that time frame "only after leave of the judge is obtained...." Because leave was not obtained, the pleading

is a nullity. As the court said in *Forest Lane Porsche Audi v. G & K Services,* 717 S.W.2d 470, 473 (Tex.App.—Fort Worth 1986, no writ), "Under rule 63, amended pleadings cannot be filed without leave of court within seven days of the trial setting." The motion for rehearing by Key West and Eid is overruled.

The Lees ask us to reconsider our method of determining the balance due on the Lee note after foreclosure. Pointing to our footnote three, they change various facts in the example to illustrate the inequity that can result under some circumstances. Our resolution of the issue was not based on a balancing of the equities; it was based on our interpretation of the contract of the parties. We cannot change that contract. The Lees' motion for rehearing is overruled.